IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JUAN CERVANTES; RAFAEL ARVIZU; NICOLAS GOMEZ; CESAR NAVA; and ALEJANDRO CRUZ-SANDOVAL, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>A.C.F. CUSTOM CONCRETE CONSTRUCTION, INC.; ART C. FISHER; and DOES 1 through 20, inclusive,<br><br>Defendants. | No. C 08-04798 RS<br><br>**ORDER REGARDING MOTION TO APPROVE SETTLEMENT AGREEMENT AND APPROVE TERMS OF STIPULATED INJUNCTION** |

## I. INTRODUCTION

THIS MATTER is before the Court on the parties' joint motion to approve the proposed settlement agreement and stipulated injunction. For the reasons stated below, the parties will be granted leave to submit a renewed request to address the inadequacies identified in this order. The hearing on this motion, currently scheduled for October 28, 2009, is vacated.

United States District Court
For the Northern District of California

## II. FACTUAL AND PROCEDURAL HISTORY

According to the complaint, defendants A.C.F. Custom Concrete Construction, Inc., and Art C. Fisher (collectively, "A.C.F.") are in the business of laying and repairing concrete. Plaintiffs Juan Cervantes, Rafael Arvizu, Nicolas Gomez, Cesar Nava, and Alejandro Cruz-Sandoval are current or former employees of A.C.F., and they allege that A.C.F. has violated the Fair Labor Standards Act ("FLSA") by failing to pay its employees at or above minimum wage, and by failing to pay FLSA-mandated overtime wages.[1] The complaint estimates that the potential class would contain more than 100 current and former A.C.F. employees.

On April 30, 2009, the Court signed a stipulated order conditionally certifying the case as a FLSA collective action. The stipulated order approved a proposed collective action notice to be sent to all potential opt-in plaintiffs and instructed A.C.F. to post the notice at its place of business. Finally, the order set a 60-day deadline for plaintiffs' counsel to distribute notice of the lawsuit to potential class members and to file opt-in consent forms from any persons who wished to join the class. Pursuant to these conditions, plaintiffs mailed 24 notice forms to current and former A.C.F. employees. By the expiration of the 60-day deadline, plaintiffs' counsel had collected eight opt-in forms. These eight, combined with the five named plaintiffs, amount to a total of 13 persons wishing to participate in the lawsuit.[2] *See* Exh. A–H to Supplemental Talamantes Declaration, filed October 19, 2009 (opt-in forms signed by Carlos Juan Castenada, Octavio Cervantes, Joseph Lujan, Arthuro Luna, Gustavo Luna, Melbin Melendez, Cuatemouc Quesada, and Juan Carlos Rodriquez).

Following several months of discovery and mediation, the parties have reached the settlement agreement which is the subject of the instant motion. In brief, the terms of the settlement agreement are as follows: the common settlement fund will contain $101,000.00, to be paid out to

---

[1] The original complaint also included several claims under the California Labor Code and the California Business and Professions Code. The instant motion, however, indicates that plaintiffs have dropped all state law claims, leaving only the FLSA claim alive.

[2] One additional individual, Jorge Cervantes, signed an opt-in form on September 27, 2008, a few days prior to the commencement of this action. *See* Exh. A to Complaint. Since then, however, he has not been named as a plaintiff, nor has his name appeared in the parties' Settlement Agreement with the other 13. Accordingly, the Court will presume that he has not opted into the instant class.

the plaintiffs in a series of installments through October 2012. $35,350.00, or 35% of the total settlement, is to be allocated to attorneys' fees. A.C.F. will bear the costs of administering the settlement fund. A.C.F. has also stipulated to the issuance of an injunction requiring compliance with state and federal wage and hour regulations. *See* Settlement and Security Agreement, *attached as Exh. A to* Talamantes Declaration, filed September 29, 2009 (hereinafter the "Settlement Agreement").

### III.  ANALYSIS

A.  <u>Final Class Certification</u>

In analyzing the instant motion, the Court must bear in mind what the Ninth Circuit has called "structural distinctions" between an FLSA collective action and a Rule 23 class action. *Smith v. T-Mobile USA Inc.*, 570 F.3d 1119, 1122 (9th Cir. 2009). Individuals in FLSA collective actions, unlike Rule 23 class members, must opt *in* to the action if they wish to be considered members of the class. 29 U.S.C. § 216(b) (providing that no employee other than the plaintiff "shall be a party plaintiff to [a FLSA collective] action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought"); *see Smith*, 570 F.3d 1122–23 (explaining the theoretical distinctions between FLSA and Rule 23). Generally, an "FLSA suit provides a means of participation for individuals who truly wish to join the suit, while requiring no action from those who do not wish to join. By contrast, a Rule 23 class requires that a potential class member take affirmative action not to be bound by the judgment." *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 469–70 (N.D. Cal. 2004).

Because of these structural differences, there has been some confusion in the district courts about the proper analysis for FLSA class certification purposes. "Courts generally follow one of two approaches: (1) evaluating the FLSA collective action in terms of Rule 23's class certification requirements; or (2) applying a two-step approach involving initial notice to prospective plaintiffs followed by a final evaluation whether such plaintiffs are similarly situated. The majority of courts prefer the latter approach." *Leuthold*, 224 F.R.D. at 466 (internal citations omitted) (adopting the two-tier analysis); *see also Wong v. HSBC Mortg. Corp. (USA)*, No. C 07-2446-MMC, 2008 WL

753889, at *2 n.2 (N.D. Cal. Mar. 19, 2008) (noting the varying approaches described in *Leuthold* and adopting the two-tier approach because the parties so stipulated); *cf. Wright v. Linkus Enters., Inc.*, No. 2:07-CV-01347-MCE-CMK, 2009 WL 2365436, at *3-8 (E.D. Cal. July 29, 2009) (conducting the full Rule 23 analysis in a class action involving *both* FLSA and state law claims). The trend in the Northern District of California appears to favor the two-tier approach, and the Court will adopt it here.

"The first step under the two-tiered approach considers whether the proposed class should be given notice of the action." *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 527 F. Supp. 2d 1053, 1071 (N.D. Cal. 2007) (citing *Leuthold*, 224 F.R.D. at 467). This decision is based on the pleadings and affidavits submitted by the parties. *Id.* The court makes the determination under a fairly lenient standard due to the limited amount of evidence before it, resulting typically in conditional class certification. *Id.* Here, as noted above, the parties have obtained the Court's approval for their stipulation to conditional class certification. Stipulation and Order Approving Collective Class Action Notice, filed April 30, 2009, at 3.

In the second step of the analysis, which ordinarily occurs after discovery is complete, the district court must make a factual determination regarding the propriety and scope of the class. *Leuthold*, 224 F.R.D. at 467. In so doing, the court considers the following factors: "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendants with respect to the individual plaintiffs; and (3) fairness and procedural considerations." *Id.* Should the court determine on the basis of the complete factual record that the plaintiffs are not similarly situated, then the court may decertify the class and dismiss the opt-in plaintiffs without prejudice." *Id.*

Here, A.C.F.—the party to be burdened—has stipulated to final class certification of the 13 plaintiffs. Nonetheless, in assessing the Settlement Agreement, the Court must conduct an independent analysis of the *Leuthold* factors. As to the first two factors, the record is sparse, particularly with respect to the eight opt-in plaintiffs. Each opt-in plaintiff signed a Court-approved boilerplate consent form, which stated that he or she had some period of employment with A.C.F.

and that he or she wishes to join "an action . . . to recover any unpaid minimum wages, overtime, liquidated damages, attorneys' fees, costs, and other relief arising out of" that period of employment. While this language is adequate for opt-in purposes, it lacks sufficient specificity to allow meaningful review of the "disparate factual and employment settings of the individual plaintiffs" or of "the various defenses available to the defendants with respect to the individual plaintiffs." There is scarcely more information as to the five named plaintiffs, other than the averments of the complaint. While that document generally describes the types of work performed by the named plaintiffs, such as cement masonry and ironwork, it makes no allegations specific to any one plaintiff, such as a general estimate of any one plaintiff's monetary damages, or even a general time period during which any one plaintiff worked for A.C.F. *Compare Wong*, 2008 WL 753889, at *3 (noting that at least fifteen opt-in FLSA plaintiffs submitted detailed declarations describing their job duties and explaining how often they worked overtime).

The third *Leuthold* factor, which directs the Court to weigh the propriety and scope of the class using fairness and procedural considerations, is also somewhat troubling. The complaint estimates that the class should number 100 persons or more, yet plaintiffs' counsel mailed only 24 opt-in forms and received back only eight. The reasons for this disparity have not been explained. As none of the *Leuthold* factors has, so far, been fully satisfied, the Court cannot certify this class in final form at this juncture. The class will remain conditionally certified only, until the parties can produce more evidence to enable the Court to undertake a meaningful analysis.

B.  Attorneys' Fees

Even were it appropriate to certify the FLSA class at this time, the Court would be unable to approve the terms of the parties' proposed Settlement Agreement as it stands, due to its inappropriate attorneys' fees provisions.

The FLSA's mandatory fee-shifting provision states that "[t]he court . . . *shall*, in *addition* to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b) (emphases added). Generally, in cases governed by the FLSA, attorneys' fees awards may be either negotiated or calculated as a

percentage of the common settlement fund. *Tarlecki v. Bebe Stores, Inc.*, C 05-01777 MHP, 2009 WL 1364340, at *3 (N.D. Cal. 2009). Either way, however, the court has an obligation to determine that the award is inherently fair. *Id.* As the Ninth Circuit has observed: "Because in common fund cases the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage, courts have stressed that when awarding attorneys' fees from a common fund, the district court must assume the role of fiduciary for the class plaintiffs. Accordingly, fee applications must be closely scrutinized. Rubber-stamp approval, even in the absence of objections, is improper." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002) (internal citation and quotation marks omitted).

The Ninth Circuit has described two alternate routes available to parties who, as here, are governed by a statute providing for mandatory shifting of fees and costs and who propose to settle by means of a common fund:

> In a class action involving both a statutory fee-shifting provision and an actual or putative common fund, the parties may negotiate and settle the amount of statutory fees along with the merits of the case, as permitted by *Evans* [*v. Jeff. D.*, 475 U.S. 717 (1986)]. In the course of judicial review, the amount of such attorneys' fees can be approved if they meet the reasonableness standard when measured against statutory fee principles. Alternatively, the parties may negotiate and agree to the value of a common fund (which will ordinarily include an amount representing an estimated hypothetical award of statutory fees) and provide that, subsequently, class counsel will apply to the court for an award from the fund, using common fund fee principles. In those circumstances, the agreement as a whole does not stand or fall on the amount of fees. Instead, after the court determines the reasonable amount of attorneys' fees, all the remaining value of the fund belongs to the class rather than reverting to the defendant.

*Staton v. Boeing Co.*, 327 F.3d 938, 972 (9th Cir. 2003). The Court added in a footnote that "[a]ny variants [on these two alternate routes], to be reasonable, would have to provide equivalent assurance that the inherent tensions among class representation, defendant's interests in minimizing the cost of the total settlement package, and class counsel's interest in fees are being adequately policed by the court." *Id.* at 972, n.7.

In *Staton*, the parties had followed neither of the alternate routes, but instead had negotiated and conclusively settled the amount of attorneys' fees to be awarded to class counsel as an integral part of the settlement agreement. In so doing, they effectively "conditioned the merits settlement

upon judicial approval of the agreed-upon fees." *Id.* at 969. The Court was suspicious of the settlement negotiations and troubled that "the parties were not willing to give the court supervisory discretion to determine the distribution of the total settlement package between counsel and the class." As the Court explained: "When the ordinary procedure is not followed and instead the parties explicitly condition the merits settlement on a fee award justified on a common fund basis, the obvious risk arises that plaintiffs' lawyers will be induced to forego a fair settlement for their clients in order to gain a higher award of attorneys' fees." *Id.* at 970. "That risk," the Court continued, "is, if anything, exacerbated where, as here, the agreement provides for payment of fees by the defendant, as in a statutory fee-shifting situation, but the parties choose to justify the fee as coming from a putative common fund. Where that is the case, courts have to be alert to the possibility that the parties have adopted this hybrid course precisely because the fee award is in fact higher than could be supported on a statutory fee-shifting basis[.]" *Id.* at 970-71. Ultimately, the Court concluded that the parties had followed improper procedures in negotiating attorneys' fees, and disavowed the settlement in its entirety.

The attorneys' fee arrangements in this case bear significant similarities to the invalidated fee arrangements in *Staton*. The fees were a negotiated term of the Settlement Agreement, and the parties have already arranged for the settlement fund to pay the fees in a *pro rata* fashion to plaintiffs' attorneys in conjunction with each of the fund's installment payments to the 13 class members, leaving no opportunity for independent judicial review of the reasonableness of the fee amounts. According to the parties' joint brief, the negotiations were complicated by A.C.F.'s financial difficulties, and the parties readily concede that "the members of the FLSA class and their attorneys have steeply discounted this settlement in an effort to keep the Defendants out of bankruptcy." Plaintiffs' counsel allege that they have devoted over 300 hours of attorney time to this lawsuit to date, amounting to $126,880.00 in fees alone; and that the sum they stand to gain from the Settlement Agreement will cover only about 20% of this figure. Nonetheless, that sum represents 35% of the total Settlement Fund—a significant departure from the 25% that is the

benchmark in this type of case.[3] *See Staton*, 327 F.3d at 968 (noting that 25% of the common fund is the benchmark the Ninth Circuit has established as a measure of appropriate attorneys' fees).

Furthermore, the Court lacks the power to sever the attorneys' fees provisions of the Settlement Agreement and approve the rest. "[T]he power to approve or reject a settlement negotiated by the parties before trial does not authorize the court to require the parties to accept a settlement to which they have not agreed. . . . [The court lacks] the power, in advance of trial, to modify a proposed consent decree and order its acceptance over either party's objection." *Evans v. Jeff D.*, 475 U.S. 717, 726-27 (1986); *see also Hanlon*, 150 F.3d at 1029 (9th Cir. 1998) (holding that the courts lack the power to "delete, modify, or substitute certain provisions" of a settlement agreement and that "[t]he settlement must stand or fall in its entirety" (internal quotation marks omitted)). For these reasons, the Settlement Agreement as it currently stands cannot be given effect, even were its class certification provisions satisfactory.

## IV. CONCLUSION

In light of these considerations, the parties will be given leave to address the existing inadequacies in their joint motion, as reflected in *Staton*. The parties are also reminded of their duty to provide some amount of evidence beyond the mere averments of the complaint, which will enable the Court to conduct a meaningful review of the *Leuthold* factors.

## V. ORDER

IT IS, THEREFORE, ORDERED that the parties shall have 30 days to provide any renewed request for approval consistent with the issues raised in this order.

The hearing on this matter, currently scheduled for October 28, 2009, is VACATED, and, upon receipt of any renewed approval request, the Court will advise the parties whether a new hearing will be scheduled.

---

[3] In a common fund case, the Court has discretion to determine whether to calculate attorneys' fees according to the "lodestar method" or the "percentage method." *Hanlon v. Chrysler Corp.*, 150 F3d 1011, 1029 (9th Cir. 1998). The lodestar method measures the lawyers' investment of time in the litigation and may also include a risk multiplier, whereas the percentage method simply awards the lawyers a percentage of the common fund. *Id.* In *Hanlon*, the Court utilized the percentage method as a "cross-check" on the lodestar calculation.

No. C 08-04798 RS
ORDER

8

Dated: 10/21/09

_____
RICHARD SEEBORG
UNITED STATES MAGISTRATE JUDGE